1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   ARMANDO CUEVAS and HEATHER
     BURLETTE,
13                                     NO. 2: 04-CV-2092-MCE-GGH
           Plaintiffs,
14
           v.                          MEMORANDUM AND ORDER
15
     EL DORADO COUNTY SHERIFF'S
16   OFFICE, et al.,

17         Defendants.

18                          ----oo0oo----

19

20       Through the present action, Plaintiffs Armando Cuevas

21   ("Cuevas") and Heather Burlette ("Burlette") claim that

22   Defendants El Dorado County Sheriff's Office ("Defendant El

23   Dorado County"), Sheriff Jeff Neves, Officer Brian Golmitz

24   ("Defendant Supervisors") Officer Jon De Roco, Officer Richard

25   Horn, Officer Michael Cook, and Officer Christopher Starr

26   ("Defendant Officers")(collectively "Defendants") violated their

27   civil rights during the course of entering and searching

28   Plaintiffs' home.  Specifically, Plaintiffs allege federal claims

                                    1

under the Civil Rights Act of 1871 ("Section 1983"), 42 U.S.C. §
1983, including illegal search and seizure and violation of due
process.  In addition, Plaintiffs raise state law claims of
negligence, assault and battery, abuse of criminal process, false
arrest and false imprisonment.

All Defendants now seek summary judgment or in the
alternative summary adjudication on Plaintiffs' claims.  For the
reasons set forth below, those motions are granted and
Plaintiffs' state law claims are remanded to the state court.[1]

**BACKGROUND**

On the evening of February 25, 2004, Plaintiffs Cuevas and
Burlette were working in the office of their rented home at 464
Capella Drive in Diamond Springs, California.  Sometime around
nightfall on that date, parole officer Jon De Roco together with
Deputy Sheriff Christopher Starr approached the front door of the
Capella Drive residence to conduct a "knock-and-talk" with an
absconded parolee by the name of Randy Witmore ("Witmore"), they
believed, resided therein.[2]  While Officers De Roco and Starr
approached the front of the residence, Deputy Sheriff Officers
Horn and Cook entered the back yard to guard the rear entry.
Upon reaching the front door, De Roco knocked summoning Cuevas.

---

[1]Because oral argument will not be of material assistance,
the Court orders this matter submitted on the briefs.  E.D. Cal.
Local Rule 78-230(h).

[2]Although currently occupied by Plaintiffs, the Capella
Drive residence was also the last known address of parolee at
large, Randy Witmore.

1    As Cuevas answered the door, Burlette remained in an adjacent
2  room of the home.  The subsequent events are hotly contested.
3  However, considering only Plaintiffs' version of events as the
4  Court must, De Roco called out the name "Randy".  Cuevas Depo.
5  90:20-22.  Simultaneously with asking Cuevas whether he was
6  Randy, De Roco pushed forward on the door.  Cuevas Depo. 91:14-
7  20.  At that point, Cuevas said nothing but attempted to close
8  the door on Defendant Officers.  Cuevas Depo. 91:1-25.  Cuevas
9  concedes that, without clarifying his identity or otherwise
10  explaining his attempt to close the door, he struck De Roco in
11  the left side of the head with the door causing Roco to suffer a
12  black eye and chipped teeth.  De Roco together with Starr
13  immediately forced their way into the residence and wrestled
14  Cuevas to the floor handcuffing him and directing Burlette to
15  remain in plain view.  Upon hearing the commotion, Defendants
16  Horn and Cook also entered the residence from the rear.
17  Defendant Officers then conducted a warrantless search of the
18  property and ultimately arrested Cuevas for battery on a peace
19  officer under California Penal Code § 243(c)(2).  Ultimately,
20  that charge against Cuevas was dropped and no charges were
21  brought against Burlette.
22    As a result of the foregoing events, Plaintiffs filed this
23  action alleging numerous violations of their constitutional and
24  statutory rights including the right to be free from unreasonable
25  search and seizure, negligence, assault and battery, abuse of
26  criminal process, false arrest and false imprisonment, and a
27  deprivation of their right to due process.
28  ///

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323(quoting Rule 56(c)).

4

1    If the moving party meets its initial responsibility, the
2  burden then shifts to the opposing party to establish that a
3  genuine issue as to any material fact actually does exist.
4  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
5  585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
6  253, 288-89 (1968).

7    In attempting to establish the existence of this factual
8  dispute, the opposing party must tender evidence of specific
9  facts in the form of affidavits, and/or admissible discovery
10  material, in support of its contention that the dispute exists.
11  Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
12  the fact in contention is material, i.e., a fact that might
13  affect the outcome of the suit under the governing law, and that
14  the dispute is genuine, i.e., the evidence is such that a
15  reasonable jury could return a verdict for the nonmoving party.
16  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52
17  (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper
18  Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,
19  "before the evidence is left to the jury, there is a preliminary
20  question for the judge, not whether there is literally no
21  evidence, but whether there is any upon which a jury could
22  properly proceed to find a verdict for the party producing it,
23  upon whom the onus of proof is imposed."  Anderson, 477 U.S. at
24  251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20
25  L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the
26  moving party has carried its burden under Rule 56(c), its
27  opponent must do more that simply show that there is some
28  metaphysical doubt as to the material facts .... Where the record

5

taken as a whole could not lead a rational trier of fact to find
for the nonmoving party, there is no 'genuine issue for trial.'"
<u>Matsushita</u>, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the
opposing party is to be believed, and all reasonable inferences
that may be drawn from the facts placed before the court must be
drawn in favor of the opposing party.  <u>Anderson</u>, 477 U.S. at 255.
Nevertheless, inferences are not drawn out of the air, and it is
the opposing party's obligation to produce a factual predicate
from which the inference may be drawn.  <u>Richards v. Nielsen
Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
<u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

Plaintiffs generally aver that Defendants violated a number
of their constitutional rights including their Fourth Amendment
right to be free from unreasonable search and seizure as well as
their right to due process and their right to be free from self-
incrimination under the Fifth Amendment of the United States
Constitution.  As a result of harms allegedly suffered, they seek
recovery under 42 U.S.C. § 1983.

Defendants rebut that they did not violate Plaintiffs'
constitutional rights and that, to the extent the Court finds
otherwise, they are protected by qualified immunity.

The Ninth Circuit recently addressed a case factually on all
fours with the case presently before this Court.  In <u>Motley v.
Parks</u>, 2005 U.S. App. LEXIS 29008 (9th Cir. 2005)(en banc), the

plaintiff was the resident of an apartment that was also the last known residence of a parolee at large.  Defendant peace officers went to search what they believed to be the parolee's residence but what was, in fact, plaintiffs principal place of residence. Just as in the case at bar, two officers proceeded to the rear of the apartment while two other officers went to the front door.

Ultimately, plaintiff's apartment was searched without her consent and she brought suit alleging generally the same constitutional violations as Plaintiffs are alleging herein.  The Ninth Circuit concluded that the defendants were entitled to qualified immunity and affirmed the lower court's dismissal of plaintiff's claims in their entirety.  That en banc decision clarified a number of issues in the Ninth Circuit regarding parole related searches and is instructive in the case at bar.

**I.   Qualified Immunity**

A private right of action pursuant to 42 U.S.C. § 1983 exists against law enforcement officers who, acting under the color of authority, violate federal constitutional or statutory rights of an individual.  See Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999).  The defense of qualified immunity, however, shields an officer from trial when the officer "reasonably mis-apprehends the law governing the circumstances she confronted," even if the officer's conduct was constitutionally deficient.  Brosseau v. Haugen, 543 U.S. 194, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004)(per curiam).

Where, as here, some or all of the defendants seek qualified

7

1   immunity, a ruling on that issue should be made early in the
2   proceedings so that the costs and expenses of trial are avoided
3   where the defense is dispositive.  Saucier v. Katz, 533 U.S. 194,
4   121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  In Saucier, the
5   Supreme Court laid out the framework for determining an officer's
6   entitlement to qualified immunity.  The threshold inquiry
7   requires a court to ask, "taken in the light most favorable to
8   the party asserting the injury, do the facts alleged show the
9   officer's conduct violated a constitutional right?"  Id. at 201.
10  The inquiry ends at this stage if no constitutional right is
11  found to have been violated.  Id.

12      If, on the other hand, the plaintiff's allegations do make
13  out a constitutional injury, the court must then determine
14  whether that constitutional right was clearly established at the
15  time of the violation.  Id.  If the right was not clearly
16  established, the qualified immunity doctrine shields the officer
17  from further litigation.  Id.  Finally, even if the violated
18  right was clearly established, the Saucier court recognized that
19  it may be difficult for a police officer fully to appreciate how
20  the legal constraints apply to the specific situation he or she
21  faces. Under such a circumstance, "if the officer's mistake as to
22  what the law requires is reasonable, . . . the officer is
23  entitled to the immunity defense."  Id. at 205.

24      As noted above, the threshold inquiry requires this Court to
25  ask, taken in the light most favorable to Plaintiffs, do the
26  facts alleged show the Defendants' conduct violated a
27  constitutional right?

28

1    **1.    Violation of Fourth Amendment**

2         **A.    Illegal Search**

3

4         A reasonable parole search conducted by law enforcement

5    officers without a warrant does not run afoul of the Fourth

6    Amendment.  <u>Motley</u>, 2005 U.S. App. LEXIS 29008 at *16 (quoting

7    <u>Griffin v. Wisconsin</u>, 483 U.S. 868, 872-75, 107 S. Ct. 3164, 97

8    L. Ed. 2d 709 (1987)).  A reasonable parole search exists when

9    law enforcement officers have probable cause to believe that the

10   parolee is a resident of the house to be searched.  <u>Motley</u>, 2005

11   U.S. App. LEXIS 29008 at *19. "In dealing with probable cause,

12   ... as the very name implies, we deal with probabilities.  These

13   are not technical; they are the factual and practical

14   considerations of everyday life on which reasonable and prudent

15   men, not legal technicians, act."  <u>Id.</u> at *24-25 (quoting

16   <u>Brinegar v. United States</u>, 338 U.S. 160, 175, 69 S. Ct. 1302, 93

17   L. Ed. 1879 (1949)).  Accordingly, if Defendant Officers in this

18   instance had probable cause to believe the Capella Drive

19   residence was, in fact, Witmore's residence, no constitutional

20   violation will be found and Plaintiffs' claim must fail.

21        Plaintiffs moved into the Capella Drive residence five

22   months prior to this incident.  Undisp. Fact 2.  The Capella

23   Drive residence was the only known address and emergency contact

24   address for Witmore, who was released from prison January 16,

25   2004.  Undisp. Fact 4.  On the day of the incident, De Roco

26   determined that Witmore was not in custody by referring to the

27   Department of Corrections' database, OPUS, and then telephoning

28   the releasing institution.  De Roco Depo. 131:17-19; Undisp. Fact

9

1  7.  Horn then checked the ACIS local law enforcement database
2  which confirmed at least one law enforcement contact in 2002 with
3  Witmore at the Capella Drive residence.  Undisp. Fact 13.

4      In assessing whether the foregoing steps were sufficient to
5  constitute probable cause, the Court again turns to the <u>Motley</u>
6  decision.  In that case, the Ninth Circuit concluded that it was
7  reasonable for officers to rely on information of the parolee's
8  whereabouts obtained a week in advance of the search.  This is in
9  stark contrast to the present case where the information
10 regarding Witmore's whereabouts was verified on the very day of
11 the search.  In addition, the <u>Motley</u> court concluded that the
12 officers had probable cause to search despite the fact that the
13 parolee in the <u>Motley</u> case was in custody at the time of the
14 search, a fact which could have easily been ascertained in
15 advance.  Here, Witmore was not in custody and, in fact,
16 Defendant Officers were in search of him on the night they
17 approached the Capella Drive residence.

18     In light of the foregoing, this Court concludes that
19 Defendant Officers had probable cause to believe they were, in
20 fact, at Witmore's residence.  They did not rush the residence
21 blindly but rather, they confirmed the Capella Drive residence
22 as Witmore's last known address and emergency contact address
23 through at least two police databases and Witmore's parolee
24 interview sheet.  Undisp. Facts 4, 7, 13.  In addition, Defendant
25 Officers were certainly reasonable in assuming they had the
26 correct residence when Cuevas responded to De Roco's question of
27 whether he was "Randy" by attempting to close the door and then
28 striking De Roco with enough force to give him a black eye and

1   chip his teeth.  Given that Defendant officers had probable cause

2   to believe Witmore resided at the Capella Drive residence, they

3   acted lawfully in entering and searching Plaintiffs' residence.

4        In addition, because Defendant officers had probable cause

5   to believe they were at the correct residence, the Court finds

6   that they were entitled to maintain that belief until presented

7   with convincing evidence that the information they had relied

8   upon was incorrect.  <u>Motley</u>, 2005 U.S. App. LEXIS 29008 at *26.

9   No such evidence was forthcoming from Plaintiffs and, in fact,

10  Defendant Officers' belief was likely bolstered by Cuevas'

11  decision not to address De Roco and, instead, to attempt to close

12  the door followed by striking De Roco in the head.

13       In sum, the Officers required probable cause to believe that

14  the Capella Drive residence was Witmore's, and they met that

15  burden.  Accordingly, no constitutional right is found to have

16  been violated and Defendant Officers' Motion for Summary Judgment

17  as to Plaintiffs' claim of illegal search in violation of the

18  Fourth Amendment of the United States Constitution is granted.[3]

19

20          **B.   Illegal Seizure**

21

22       Again, Cuevas alleges that his Fourth Amendment rights were

23  violated in that he was illegally seized by Defendants.  Cuevas

24  avers that his warrantless arrest is constitutionally infirm

25  because the Defendant Officers were objectively unreasonable in

26

27       [3]The Court need not address the constitutional issues raised
    by a suspicionless search as the Defendants had a particularized
    suspicion that Witmore was a parole violator because he had
28  failed to report.  De Roco Depo. 21:18-19.

                                11

seizing his person.  He further explains that he should not have
been arrested because his battery of De Roco was solely a result
of his mistaken belief that De Roco was a home invader.  Plf.s'
Opp. 11:13-14.  Since the ultimate charge against Cuevas was
battery on a peace officer, Cuevas claims he cannot be guilty of
that crime making his arrest constitutionally unreasonable.

The law on this issue is patently clear.  A warrantless
arrest by a law enforcement officer is reasonable under the
Fourth Amendment where there is probable cause to believe that a
criminal offense has been or is being committed.  Devenpeck v.
Alford, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537
(U.S. 2004)(citing United States v. Watson, 423 U.S. 411,
417-424, 46 L. Ed. 2d 598, 96 S. Ct. 820 (1976).  The arresting
officer's subjective reason for making the arrest need not be the
criminal offense as to which the known facts provide probable
cause.  Devenpeck, 543 U.S. at 153.  Indeed, a peace officer may
arrest an individual for any minor criminal offense where
supported by probable cause even if the offense is not punishable
by confinement.  See generally Atwater v. City of Lago Vista, 532
U.S. 318,  121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001).  Further,
whether probable cause exists depends upon the reasonable
conclusion to be drawn from the facts known to the arresting
officer at the time of the arrest.  Devenpeck, 543 U.S. at 153.
Consequently, if Cuevas engaged in any activity that appeared to
violate California's Penal Code, probable cause existed whether
or not that same crime was the ultimate basis for his arrest.

Here, the uncontroverted facts establish that Cuevas struck
De Roco almost immediately after answering the door.  The use of

12

1   force or violence upon *any* person, whether or not a peace

2   officer, is a violation of California Penal Code section 243 and

3   would have given Defendant Officers probable cause to arrest

4   Cuevas.[4]   Accordingly, Defendant Officers' motion for summary

5   judgment as to Cuevas' claim of illegal seizure in violation of

6   the Fourth Amendment of the United States Constitution is

7   granted.

8        Plaintiff Burlette concedes that she was not touched,

9   threatened, arrested, handcuffed or cited on the evening of the

10   incident.  Undisp. Facts 1 - 34, 38 - 43.  Although Burlette was

11   questioned, mere police questioning does not constitute a seizure

12   for purposes of the Fourth Amendment.  See Florida v. Bostick,

13   501 U.S. 429, 434, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991).

14   The salient inquiry is whether a reasonable person would feel

15   free "to disregard the police and go about his business." Id.

16   Burlette conceded that, in fact, there was no effort on the part

17   of Defendant Officers to subdue or restrain her movements.   In

18   fact, immediately upon hearing the struggle between Cuevas and

19   Defendants De Roco and Starr in the entry of the home, Burlette

20   went to the telephone in another room and dialed 911.  She then

21   returned to where Cuevas was.  Later, she was asked to retrieve

22   Cuevas' wallet and, again, left the presence of Defendant

23   Officers without issue.  It is clear from Plaintiffs' version of

24   the facts that Burlette freely moved about the residence

25   throughout the course of the incident.  Such free motion does not

26

27        [4]A battery is any willful and unlawful use of force or
28   violence upon the person of another.  Cal. Pen. Code § 242
     (Deerings, 2005).

1   give rise to a seizure for purposes of the Fourth Amendment.

2   Accordingly, summary judgment as to Plaintiff Burlette's claim of

3   an illegal seizure is, hereby, granted in favor of Defendant

4   Officers.

5

6       **C.    Violation of Fifth Amendment**

7           **1.    Due Process**

8

9       In their Complaint, Plaintiffs allege, *inter alia*, that

10  Defendants deprived them of protections under the Fourth, Fifth,

11  and Fourteenth Amendments.  Plaintiffs are relying on 42 U.S.C. §

12  1983 to support their claim that Defendants deprived them of

13  their due process rights under the Fifth Amendment.  Cuevas

14  essentially argues that Defendants deprived him of due process by

15  conducting a warrantless arrest followed by confinement in jail.

16      Ordinarily, due process of law requires notice and an

17  opportunity for some kind of hearing prior to the deprivation of

18  a significant property or liberty interest. <u>See</u> <u>Memphis Light,</u>

19  <u>Gas & Water Div. v. Craft</u>, 436 U.S. 1, 19, 56 L. Ed. 2d 30, 98 S.

20  Ct. 1554 (1978).  Summary governmental action taken in

21  emergencies and designed to protect the public health, safety and

22  general welfare does not violate due process.  <u>Hodel v. Virginia</u>

23  <u>Surface Mining & Reclamation Ass'n</u>, 452 U.S. 264, 299-300, 69 L.

24  Ed. 2d 1, 101 S. Ct. 2352 (1981).  Government officials need to

25  act promptly and decisively when they perceive an emergency, and

26  therefore, no pre-deprivation process is due.  As noted above, if

27  an officer has probable cause to believe that an individual has

28  committed even a very minor criminal offense in his presence, he

14

may, without violating constitutional principles, arrest the

offender.  <u>Atwater</u>, 532 U.S. at 354 (2001).

Defendants are entitled to qualified immunity if there is no

constitutional violation.  <u>Saucier</u>, 533 U.S. at 201.  Plaintiffs

concede that Cuevas struck De Roco in the face blackening his eye

and chipping his teeth.  This battery on Defendant De Roco gave

Defendant Officers probable cause to believe that Cuevas had

violated California Penal Code section 243(c)(2).  Since probable

cause has been established, no constitutional right has been

violated ending the inquiry.  Accordingly, Defendant Officers'

Motion for Summary Judgment on Plaintiffs' claim for deprivation

of due process pursuant to the Fifth Amendment of the United

States Constitution is granted.


**2.   Self-Incrimination**


Plaintiffs allege that their right to be free from self-

incrimination under the Fifth Amendment of the United States

Constitution was violated when they were coerced to provide a

statement regarding the incident of February 25, 2004.

Specifically, Plaintiffs claim the submission and acceptance of

their citizen's complaint was conditioned upon their agreement to

be interviewed regarding said incident.  For purposes of this

summary judgment motion, the Court assumes that Plaintiffs were,

in fact, required to give a statement regarding the incident

before their civil complaint would be received by Defendants.

Again, the law is patently clear on this issue.  Civil

litigants do not state a valid Section 1983 claim for a violation

1   of the privilege against self-incrimination, under the Federal

2   Constitution's Fifth Amendment as made applicable to the states

3   by the Fourteenth Amendment, where (1) the litigant has never

4   been charged with any crime related to the altercation; and (2)

5   the litigant's answers to an interrogation had never been used

6   against them in any subsequent criminal prosecution.  See Chavez

7   v. Martinez, 538 U.S. 760, 123 S. Ct. 1994, 155 L. Ed. 2d 984

8   (2003).  Here, as in Chavez, Plaintiffs have never been charged

9   with any crime related to the February 25, 2004, altercation nor

10  have any of the answers they provided in the later interrogation

11  been used against them in any criminal prosecution.  Accordingly,

12  no viable Section 1983 action exists.

13       Summary judgment on Plaintiffs' claim for a violation of

14  their Fifth Amendment rights is warranted and is, hereby, granted

15  in favor of Defendants.

16

17  **II.  Claims Against Defendants Golmitz and Neves**

18

19       With respect to Plaintiffs' claim that Officer Golmitz and

20  Sheriff Neves are liable as supervising officers for their

21  alleged injuries, that claim too must fail.  A supervisor can be

22  liable under Section 1983 if he "set[s] in motion a series of

23  acts by others . . ., which he knew or reasonably should have

24  known, would cause others to inflict the constitutional injury."

25  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.

26  1991)(internal quotation marks and brackets omitted).  "Absent

27  some indication to a supervisor that an investigation was

28  inadequate or incompetent, supervisors are not obliged either to

16

1  undertake *de novo* investigations or to cross examine subordinates
2  reasonably believed to be competent as to whether their
3  investigations were negligent." <u>Motley</u>, 2005 U.S. App. LEXIS
4  29008 (quoting <u>Cecere v. City of New York</u>, 967 F.2d 826, 829 (2d
5  Cir. 1992). The record clearly shows that neither Golmitz nor
6  Neves had any reason to believe that the investigation regarding
7  Witmore's last known address and parole status were inadequate or
8  incompetent.

9      Accordingly, Defendant Supervisors' Motion for Summary
10 Judgment as to Plaintiffs' claims is granted.

11

12 **III. Claims Against Defendant El Dorado County**

13

14     In addition to the foregoing Defendants, Plaintiffs name El
15 Dorado County as a Defendant in this litigation.  Generally, a
16 plaintiff may not sue a local government agency under Section
17 1983 for an injury inflicted solely by its employees or agents.
18 <u>See</u> <u>Monell v. Dept. of Soc. Servs.</u>, 436 U.S. 658, 694, 98 S. Ct.
19 2018, 56 L. Ed. 2d 611 (1978).  Rather, a plaintiff must prove
20 that execution of a government's policy or custom inflicted the
21 injury.  <u>See</u> <u>id.</u>

22     The alleged injury of which Plaintiffs complain was
23 inflicted solely by El Dorado County's employees.  Consequently,
24 to sustain this Section 1983 action against El Dorado County,
25 Plaintiffs must establish a direct causal nexus between one of
26 its policies and Plaintiffs' alleged injuries.  To that end,
27 Plaintiffs argue that El Dorado County's policy of permitting law
28 enforcement agencies, other than the California Department of

Corrections, Parole and Community Services Division ("Parole Division"), to assist with the search for and apprehension of parolees inflicted their alleged injury.

The Court fails to see how this policy directly inflicted Plaintiffs' alleged injury.  Had all the officers that entered Plaintiffs' home on that February night been from the Parole Division rather than from both the Parole Division and the El Dorado County Sheriff's Department, Plaintiffs would nonetheless have suffered the very injury they now complain of.  The existence of officers from multiple agencies did not cause the alleged constitutional injury.  Rather, if anything, it was the unwelcome intrusion by Defendant Officers that caused the alleged injury.  Because the policy of permitting law enforcement agencies to work in tandem in apprehending parole violators did not cause Plaintiffs' alleged injury, Plaintiffs' claim against Defendant El Dorado County must fail.

Defendant El Dorado County's Motion for Summary Judgment is granted.

**IV.  State Law Claims**

Plaintiffs have alleged a number of state law causes of action including negligence, assault and battery, abuse of criminal process, false arrest and false imprisonment.  The district courts may decline to exercise supplemental jurisdiction over state claims if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367.  As is set forth above, the Court has concluded that none of Plaintiffs' federal

18

1  causes of action survive summary judgment.  Consequently, the

2  Court elects not to exercise supplemental jurisdiction and,

3  hereby, remands the remaining state law causes of action to the

4  state court for final adjudication.

5

6  **V.    Motion for Leave of Court to Disclose Expert Witnesses**

7

8       Simultaneously with Defendants' motion for summary judgment,

9  Plaintiffs filed a motion for leave of court to disclose expert

10 witnesses.  Because the Court has summarily adjudicated all

11 federal claims in favor of Defendants and has remanded

12 Plaintiffs' remaining state law claims to state court,

13 Plaintiffs' motion for leave of this Court is moot.

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

**CONCLUSION**

     For the reasons set forth fully above, Plaintiffs claims for violation of their constitutional rights including their right to be free from unreasonable search and seizure under the Fourth Amendment as well as their right to due process and their right to be free from self-incrimination under the Fifth Amendment are summarily adjudicated in favor of Defendants.  Plaintiffs remaining state law claims for negligence, assault and battery, abuse of criminal process, false arrest and false imprisonment are dismissed without prejudice.

IT IS SO ORDERED.


DATED: February 13, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

20